## ALLEN ATWATER and THOMAS MOORE, Plaintiffs, *vs.* J. GOTTLIEB SCHENCK.

ERROR TO CIRCUIT COURT, DODGE COUNTY.

Heard July 16, 1859.]                    [Decided July 22, 1859.

*Evidence—Counter-Claim—Set off—Presumptions—Public Lands.*

A bond for a deed which described the land as situated in the S. W. qr. of the S. W. qr. sec. 3, T. 10, R. 14, without mentioning the county or state in which the land is situated, is not void for uncertainty, if both parties reside in this state, and the party offers to identify the land by witnesses, and by reading a deed referred to in the bond.

The amount due upon a bond for the conveyance of real estate, is a proper counter-claim to an action on a note against the maker of the bond, when he has offered to make the conveyance provided for in the bond, and has let the holder of the note into possession of the land.

The court will take judicial notice of the government surveys and legal subdivisions, and when land is so conveyed, though the county or state is not named; yet if the parties reside in the state, the court will presume the land to lie there; at least until something to the contrary appear,

This was an action commenced before a justice of the peace of Dodge county, to recover upon the contract set out

in the complaint. The pleadings were in writing, and the justice gave judgment for the plaintiff; from which the defendants appealed to the circuit court.

The plaintiff in this action complains and claims that the defendants are indebted to him in the sum of eighty dollars, with interest, from the fifteenth day of October, 1857, at nine per cent., and states that this action is founded upon the following facts: On the 7th day of April, 1857, the parties in this action made and executed their contract in writing in the words and figures following, to-wit:

$100.

On or before the fifteenth day of October next, we promise to pay Gottlieb Schenck one hundred dollars, with use, from date, at nine per cent.

Clyman, April 7, 1857.                    T. MOORE,
                                          A. H. ATWATER.

The conditions of the above note are, that said Moore & Atwater are to deed to said Schenck, upon the maturity of said note, ¾ of the S. W. qr. of the S. W. qr. section 3, town 10, range 14 east, and upon payment for which said note is to apply; and if the above mentioned note is not applied upon the above described land, then twenty dollars are to be deducted from said note.

And the plaintiff further says, that the consideration for said contract was work and labor done and performed by plaintiff for defendants, and at their request, and for one cow sold and delivered by plaintiff to defendants.

And the plaintiff says that the defendants, Moore & Atwater, did not deed to him, upon the maturity of said contract, ¾ of the S. W. qr. of the S. W. qr. sec. 3, town 10, range 14 east, nor has the amount of said note been applied as payment upon the above described land.

And the plaintiff further says, that he is now the lawful owner and holder of said contract, and that there is due to him on the contract and from the defendants, the sum of eighty dollars and interest, from October 15th, 1857, at nine per cent.

To this complaint the defendants filed the plea of the general issue, and gave notice that they would give in evidence on the trial of the action as matter of defense; that on the 19th day of January, 1857, they sold to the plaintiff—for the sum of $300, to be paid as hereinafter stated, the south west quarter

of the south west quarter of section three, township ten north, of range fourteen east, excepting ten acres formerly deeded by one John Corwith to Wm. H. Dearborn, out of the south west corner, containing thirty acres more or less; excepting and reserving the sawing timber upon 20 acres, leaving two acres of timber out of the north west corner—by the name of Cutliff Shank; the 'sawing timber to measure sixteen inches at the butt of the tree, and all of that size and upwards to be called sawing timber.

And that the defendants executed in writing, under their hands and seals, and delivered to said plaintiff by the name of Cutliff Shank, their bond, in the penal sum of $300, conditioned for the conveyance by deed of the above described premises, with the usual covenants of warranty upon the payment by the plaintiff, called in said bond Cutliff Shank, to these defendants of the sum of $300, one part on the first day of April next, and the other part on the first day of October next, with interest, at the rate of nine per cent.; that the note was given for work, labor, and services done and performed by plaintiff for the defendants in the winter of 1856 and 1857, and also for one cow sold and delivered to the defendants by the plaintiff about that time; that it was agreed at the time the services were rendered and the cow sold, between them, in consideration that the defendants would receive the same, that the work, and labor, and cow should apply upon the bond, and that the note was given as evidence of the value of the services and cow, as agreed upon between the parties, and upon the express understanding and agreement that the same should be applied upon the bond; that a further condition was agreed upon in regard to the note, to-wit: That if the note should not be applied upon the said bond, then $20 was to be deducted therefrom, but the express understanding and intention of all parties was that it should apply on the bond.

And that the plaintiff signed the bond himself; that he has not made payment of the sums therein mentioned to the defendants agreeably to the conditions of the bond, nor in any other manner; that they have ever been ready and willing to comply with the conditions of the bond, and have offered so to do to the plaintiff; that the only case understood and agreed upon between the parties, in which the note was not to apply on the bond, was in the event that the defendants should refuse or be unable to comply with the conditions of the bond; and that upon the execution and delivery of the

bond, the plaintiff took possession of the premises and has had the control and occupancy of the same ever since; that there is now due and payable to them upon the bond for the land from the plaintiff, the sum of $300 with interest at nine per cent. from the 19th day of January, 1857, and that they have ever been ready to apply the note thereon; that the plaintiff is indebted to them for the land so sold, in the sum of $300, with interest from January 19, 1857, $100 of which these defendants will set off on the trial of said action against the claims of the plaintiff.

On the trial the judge instructed the jury:

" 1. The bond introduced by the defendants is void for uncertainty of description, and the defendants can base no defense to this action thereon.

" 2. It was optional with plaintiff to have applied the instrument upon which this claim is brought and which has been introduced in evidence as payment for the land therein mentioned or not, and the plaintiff having elected not to apply it and having brought his action thereon, he is entitled to recover a judgment thereon for the sum of $80, with interest from the date thereof, at the stipulated rate."

The defendants asked the court to instruct the jury :

" 1. The bond introduced by the defendants is not void for uncertainty of description.

" The bond is sufficient to show a sale of the lands therein mentioned.

" 3. If the jury find that the plaintiff has been in the possession and occupancy of the land therein mentioned, since the bond was executed, and that the defendants were ready and willing and did offer to deed the land to him agreeably to the stipulation contained in the bond prior to the commencement of this action upon his paying the amount therein stipulated to be paid, and the plaintiff refused to take the land or receive a conveyance from defendants, then the defendants are entitled to a set off on the bond for the land sold as against any claim the plaintiff has on the instrument upon which this action is brought.

" 4. The plaintiff can in no event recover upon the instrument upon which he claims without showing: That prior to the commencement of this action the plaintiff offered to surrender up said instrument to be applied in payment for the land therein mentioned and either tendered a deed for execution, which was refused, or demanded a conveyance which was refused, upon a second demand, after the expiration of a

reasonable time for the execution and delivery thereof had expired."

The judge refused to give the instructions asked for, and the verdict was for the plaintiff Schenck. From which the defendants sued out a writ of error.

*E. P. Smith & H. Barber*, for the plaintiffs in error.

*Smith & Keyes*, for the defendant.

*By the Court*, COLE, J. Although the bond or instrument signed by the parties to this suit, bearing date on the 19th day of January, 1857, which was offered in evidence in support of the counter claim, is not very artistically drawn, yet we do not think there can be any difficulty whatever in ascertaining the land which the plaintiffs in error therein agreed to convey to the defendant in error. The circuit court charged the jury that the bond was void for uncertainty of description. The land which was to be conveyed was described as the "southwest of the southwest quarter of section three, township ten, north of range fourteen east, excepting ten acres formerly deeded by John Corwith to Wm. H. Dearborn, out of the southwest corner, containing thirty acres, more or less." It will be seen that the county and state are not mentioned. But still, the courts will take judicial notice of the government surveys, and the legal subdivisions of the public lands; and, as the parties to this contract all reside in this state, will presume that the land referred to is situated in this state, at least until something to the contrary appears. But, moreover, the plaintiffs in error offered to identify the land by a witness, and also by the deed referred to in the bond. This was competent evidence and should have been received.

It appears that the plaintiffs in error set up a part of the amount due them on this bond, from Schenck, as a counter claim to his suit upon the note. Having proved that they

were willing and ready to convey the land before the commencement of the suit, and had placed themselves in a situation to claim the purchase money, we cannot see why the amount due upon the bond did not constitute a proper counter claim. There can be no doubt but a specific performance of this contract should be enforced and Schenck compelled to pay the contract price of the bond. Sections 55 and 56 of the code are very broad as to what is a proper subject of a coun: ter claim. It may be a cause of action arising upon contract, and existing at the commencement of the suit, whether it is such as has heretofore been denominated legal or equitable or both; (see R. S. 1859, chap. 126, § 1, sub. 1.) We therefore are of the opinion that the court improperly refused to instruct the jury as requested on behalf of the plaintiffs in error, to the effect, if they should find from the evidence, that Schenck had been in possession and occupancy of the land mentioned in the bond, since the same was executed, and that the plaintiffs in error were ready and willing, and did offer to deed the land agreeably to the condition of the bond, prior to the commencement of the suit, upon being paid the amount therein stipulated to be paid, and Schenck refused to take the bond or receive the conveyance; that then the plaintiffs in error were entitled to a set off on the bond for the land sold, as against the action brought upon the note sued on.

A question was made as to the right of Schenck to maintain an action on the instrument sued upon, without alleging and proving an offer to surrender it up and demand a conveyance, &c. We do not understand, from the condition annexed to the note, that the doing of this was necessary before Schenck could bring suit on the note. He had his option by that condition, to have the amount of the note applied on the bond in payment of the bond, or to receive eighty dollars on the note. Had Schenck made a voluntary application of the amount of the note upon the bond, he would have been enti-

tled to a credit of one hundred dollars; while, if the bond is permitted to be set up as a counter claim, and the law makes the application, he will be only credited with eighty dollars. But we do not see how this strange result is to be avoided in view of the course pursued by Schenck, the stipulation of the parties, and the inflexible rule of law in reference to set-offs.

The judgment of the circuit court is reversed and a new trial ordered.